IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VINCENT A. GEORGE, | : | Case No. 1:16-cv-688 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| CITY OF CINCINNATI, | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Federal Rule 12(c) Motion for Judgment on the Pleadings. (Doc. 10.) Plaintiff, a former Officer with the Cincinnati Police Department ("CPD"), alleges Defendant discriminated against him based on race, age, disability, and in retaliation for speaking with the press about a ticket quota system, ultimately resulting in a constructive discharge and refusal to reinstate him. Defendant contends that Plaintiff's claims are barred for failure to exhaust administrative remedies and for failure to allege sufficient facts in support of his claims. Plaintiff filed a memorandum in opposition to which Defendant has replied. (Docs. 17, 19.) For the reasons set forth below, Defendant's Motion will be GRANTED IN PART and DENIED IN PART.

I. BACKGROUND

A. Facts

Plaintiff Vincent George was employed as a Cincinnati Police Officer from January 10, 1999 to April 1, 2015. (Complaint, Doc. 1 at PageID 2 (¶ 8).) In November 2005, George disclosed to the media a ticket quota system he believed had a disproportionate adverse impact on African-American citizens. (*Id.* at ¶ 9.) From that point forward, George alleges, he was

1

"blacklisted," harassed, refused appropriate promotions and assistance, and given less desirable assignments, including an unwelcome transfer from District One to District Two in November 2008. (*Id.* at ¶¶ 8-14.) George also suffered from a chronic recurring sinus problem that occasionally required him to take doctor-ordered leave under the Family Medical Leave Act. (*Id.* at ¶ 15.)

Ultimately, George resigned effective April 1, 2015. (*Id.* at ¶ 18.) On July 20, 2015, George applied for reinstatement to the Cincinnati Police Department. (*Id.* at ¶ 19.) On August 11, 2015, then-Police Chief Jeffrey Blackwell made a handwritten notation on George's request for reinstatement, saying, "approved to HR for appropriate follow through." (*Id.* at ¶ 20.)

Dara Meadors from the Cincinnati Police Human Resources Department received the form with the handwritten notation from then-Chief Blackwell, and she sought opinions of George's former supervisors regarding George's reinstatement. (*Id.* at ¶¶ 22, 23.) George alleges that Meadors sought opinions only from former supervisors she believed would oppose George's reinstatement. (*Id.* at ¶ 23.) On September 8, 2015, Meadors directed a memorandum to "Eliot Isaac/Interim Chief of Police" recommending that George not be reinstated. (*Id.* at ¶ 24.) On September 9, 2015, Chief Blackwell was fired, and Isaac was named Interim Chief of Police. (*Id.* at ¶ 25.) On September 10, 2015, Interim Chief Isaac denied George's application for reinstatement by handwritten notation on Meadors' memorandum. (*Id.* at ¶ 26.)

On April 1, 2016, George filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 10 at PageID 103.) In it, George alleges that he was subjected to discrimination based on age and in retaliation for informing the news media about

2

the quota system in 2003.[1] The EEOC issued George a right to sue letter dated April 13, 2016. (Complaint, Doc. 1, Exhibit A at PageID 11.) Plaintiff then initiated the instant action.

### B. Procedural Posture

Plaintiff filed a Complaint, alleging the following counts: (1) Hostile work environment and constructive discharge; (2) Race discrimination; (3) Retaliation; (4) Intentional infliction of severe emotional distress; and (5) Disability discrimination. (Doc. 1.) Defendant answered, and then filed the instant Rule 12(c) Motion for Judgment on the Pleadings seeking to dismiss all claims as barred for failure to exhaust administrative remedies or for failure to allege sufficient facts to state a claim. (Docs. 5, 10.)

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial—[.]" The legal standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating a Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007).[2]

Rule 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is **plausible** on its face." *Id.* at 570 (emphasis added). "A claim has facial

---

[1] Plaintiff's EEOC charge lists 2003 as the year in which he reported the quota system to the media. (Doc. 10 at PageID 103.) George's Complaint lists 2005 as the year in which he reported the quota system to the media. (Doc. 1 at ¶ 9.) The discrepancy does not impact the relevant legal analysis at this juncture, but the Court will review all facts in the light most favorable to Plaintiff.
[2] In contrast to a Rule 12(c) motion, a Rule 12(b)(6) motion "must be made **before** pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b)(6) (emphasis added); *Lindsay*, 498 F.3d at 437 n.4.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Id.*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

### III. ANALYSIS

#### A. Count One (Hostile Work Environment and Constructive Discharge)

Defendant contends that Plaintiff's claims for hostile work environment and constructive discharge must be dismissed for failure to exhaust administrative remedies. According to Defendant, Plaintiff did not file a timely charge with the EEOC.

In Ohio, a person claiming discrimination in violation of Title VII must file a charge with the EEOC within 300 days of the alleged discriminatory practice, "or any claims arising from that act will be dismissed as untimely." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 374 (6th Cir. 2002). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, (2002), *superseded in non-relevant part by statute*, Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5. "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. However, "a charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122. "Hostile environment claims are different in kind from discrete acts. Their very nature involves

repeated conduct." *Id.* at 115. In determining whether an EEOC charge was timely filed, then, the Court must "determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 120.

In Count One of his complaint, Plaintiff alleges that he was harassed, "blacklisted," given less desirable assignments, given unwarranted negative performance reviews, refused assistance, and denied promotions after he disclosed the ticket quota system to the media in November, 2005. (Doc. 1 at ¶¶ 8-35.) Plaintiff further alleges that "he had no choice but to resign from CPD as the cumulative effect of the daily harassment, unfair treatment, and discrimination against him became unbearable." (*Id.* at ¶ 17.) He resigned, effective April 1, 2015. (*Id.* at ¶ 8.) He filed his EEOC claim on April 1, 2016—365 days after his alleged constructive discharge. (Doc. 10 at PageID 103.)

While the daily harassment and mistreatment he allegedly endured during employment may constitute one single unlawful employment practice for timeliness purposes, Plaintiff George's resignation ended the alleged daily harassment. At the moment George's resignation took effect, he and CPD severed their relationship. His resignation—like a termination, failure to promote, or refusal to hire—constitutes a "discrete act" as explained in *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114. Therefore, the 300-day clock began to run on his claims for hostile work environment and constructive discharge on April 1, 2015. As Plaintiff did not make his EEOC charge until 365 days later, Count One must be dismissed for failure to file a timely EEOC charge.

Plaintiff contends that his constructive discharge and hostile work environment claims should be saved by the doctrine of equitable estoppel as Defendant's conduct caused him to

5

delay filing his EEOC claim. George alleges he was led to believe he would be reinstated as Chief Blackwell wrote "approved to HR for appropriate follow through" on his reinstatement application on August 11, 2015. (Doc. 1 at ¶ 20.) It was not until September 10, 2015 that George learned he, in fact, would not be reinstated. (*Id.* at ¶ 26; Doc. 10 at PageID 103.)

While the 300-day time period for filing with the EEOC is subject to equitable tolling, waiver and estoppel, these equitable measures "are to be applied sparingly." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113. In the case at bar, George filed his EEOC charge 365 days after his constructive discharge. Even if the Court excluded the 30-day period Defendants led George to believe he would be reinstated (from Blackwell's August 11th notation to George learning on September 10th that he would not be reinstated), George still would not meet the 300-day EEOC filing deadline. Indeed, even if the Court excluded the entire 52-day period that George's reinstatement request was pending, George still would not meet the 300-day EEOC filing deadline. Accordingly, equitable doctrines do not apply here, and Count One must be dismissed for failure to timely exhaust administrative remedies.

### B. Count Two (Race Discrimination) and Count Five (Disability Discrimination)

Defendant contends that Plaintiff's claims for race discrimination and disability discrimination must be dismissed for failure to exhaust administrative remedies. Although the Court addressed the timeliness of Plaintiff's EEOC charge above, this argument is directed at the scope of Plaintiff's EEOC charge.

Generally, a plaintiff alleging employment discrimination cannot bring claims in a lawsuit unless he first presents those claims in an EEOC charge. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359 (6th Cir. 2010). "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Id.* at 361 (quoting 29

C.F.R. §1601.12(b)); *see also Spengler v. Worthington Cylinders*, 615 F.3d 481 (6th Cir. 2010). Allowing a claim outside the EEOC charge "would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role." *Younis*, 610 F.3d at 362. However, because aggrieved employees often file charges *pro se*,[3] EEOC claims must be construed liberally "so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id*. This "expected scope of investigation test:"

> requires a plaintiff to have alleged sufficient facts in his or her EEOC complaint to put the EEOC on notice of the other claim even though the plaintiff failed to check the appropriate box on the EEOC's complaint form. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). Accordingly, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002).

*Spengler*, 615 F.3d at 490.

In the case at bar, George marked the boxes on his EEOC form for "retaliation" and "age" discrimination, but he left blank the boxes for "race" and "disability" discrimination. (Doc. 10 at PageID 103.) This Court, then, must construe George's EEOC charge form liberally, and apply the "expected scope of investigation test" to determine whether the facts George alleged in his EEOC charge are sufficient to alert the EEOC to his race and disability discrimination charges.

George alleges the following facts in his EEOC charge form:

> 1. I am 49 years old. I worked as a Cincinnati Police Officer. In 2003, I exposed to the news media a quota system that was in place. On April 2, 2015, I constructively discharged. August 11, 2015, my request for reinstatement

---

[3] While the Court must liberally construe EEOC charges by *pro se* litigants, it is also appropriate to give a broad reading in cases where plaintiff is represented by counsel. *Spengler*, 615 F.3d at 490.

>   was approved by Jeffrey Blackwell, Police Chief. On or about September 10, 2015, Darla Meadows [sic], Personal Specialist prepared and submitted a negative report on me to Eliot Issac [sic] Interim Police Chief. Ms. Meadows [sic] also failed to provide Chief Issac [sic] the Form 17 that [was] signed by Chief Blackwell approving my reinstatement. On or about September 10, 2015, Chief Issac [sic] denied my reinstatement.
> II. On September 10, 2015, Ms. Meadows [sic] stated I would not be reinstated because it would not benefit the department. Management is responsible for the above discriminatory actions.
> III. I believe I have been discriminated against because of my age, 49, and retaliated against for complaining to the media, in violation of the Age Discrimination in Employment Act of 1967, as amended.

*Id.*

In Count Two of Plaintiff's Complaint, entitled "Race Discrimination," Plaintiff (who is African-American) alleges that during the relevant time period, CPD reinstated several Caucasian former police officers with employment records similar to or worse than Plaintiff's record, but refused to reinstate Plaintiff. Plaintiff further alleges that this adverse treatment was based on Plaintiff's race. (Doc. 1 at ¶¶ 38-45.) In Count Five of Plaintiff's Complaint, entitled "Disability Discrimination," Plaintiff alleges that he suffers from a chronic, recurring sinus problem that sometimes required him to take doctor-ordered sick leave or Family Medical Leave Act time. He further alleges that former supervisors cited his sinus-related absences as a reason for opposing his reinstatement, in violation of the Americans with Disabilities Act of 1990 ("ADA"). (Doc. 1 at ¶¶ 58-62.)

The determinative inquiry here, then, is whether the facts George alleged in his EEOC claim are sufficient to alert the EEOC to his claims for race and disability discrimination, even though he did not check the race and disability discrimination boxes on the form. The Court must conclude that they do not. Plaintiff, in his EEOC charge, does not mention race in any way,

identify himself as an African-American person, nor allege that Caucasian officers were reinstated while he was not. Similarly, Plaintiff makes no mention of his sinus-related disability or the related work time he missed because of it. Even given the most liberal reading possible, the facts alleged in the EEOC charge are not sufficient to put the EEOC on notice that George perceived himself to be a victim of race or disability discrimination. Accordingly, Counts Two and Five of Plaintiff's Complaint must be dismissed for failure to exhaust administrative remedies.

### C. Count Three (Retaliation)

Defendant contends that Plaintiff's retaliation claim (Count Three) must be dismissed for failure to exhaust administrative remedies and because Plaintiff fails to allege facts sufficient to state a claim for retaliation. As explained above, Defendant's Motion for Judgment on the Pleadings is granted as to any references in Count Three relating to a hostile work environment or constructive discharge for failure to exhaust administrative remedies by filing a timely EEOC charge. However, in Count Three, Plaintiff also alleges that his reinstatement was denied in retaliation for his exercise of protected activities under Title VII of the Civil Rights Act of 1964. (Doc. 1 at ¶¶ 38-52.) Plaintiff filed his EEOC charge (including his retaliation claim) on April 1, 2016—205 days after learning on September 10, 2015 that Defendant denied his reinstatement. (Doc. 10 at PageID 103.) Thus, he has exhausted his administrative remedies as to the claim for retaliatory failure to reinstate him.

Defendant also contends that Plaintiff has pled insufficient facts to establish the retaliatory refusal to rehire claim in Count Three. To withstand a motion for judgment on the pleadings, a complaint need allege "only enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In his Complaint, Plaintiff alleges he made complaints

and filed internal grievances related to Title VII protected activity which ultimately caused Chief Isaac to deny his reinstatement request in retaliation for those protected activities. While the details are sparse, the allegations are sufficient to withstand scrutiny under *Iqbal* and *Twombly*. Accordingly, Defendant's Motion for Judgment on the Pleadings must be denied as to the portion of Count Three alleging that Plaintiff was denied reinstatement in retaliation for Title VII protected activities.

### D. Count Four (Intentional Infliction of Emotional Distress)

The Ohio Supreme Court recognized the tort of intentional infliction of serious emotional distress in *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 453 N.E.2d 666, 670–71 (1983). Based on its reading of *Yeager*, the Sixth Circuit reduced the standard into these four elements: "(1) defendants intended to cause emotional distress, or knew or should have known that their actions would result in plaintiff's serious emotional distress, (2) defendants' conduct was extreme and outrageous, (3) defendants' actions proximately caused plaintiff's emotional injury, and (4) plaintiff suffered serious emotional anguish." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citations omitted). Emotional distress claims are appropriately considered in a motion to dismiss. *Id.* at 377–78 (citing *Rogers v. Targot Telemarketing Servs.*, 70 Ohio App. 3d 689, 591 N.E.2d 1332, 1333, 1335–36 (1990)).

The Court will focus on the second make-or-break element of the *Yeager* standard. Without an allegation of conduct that, *as a matter of law*, is extreme and outrageous, George's claim must be dismissed.

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

> decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Yeager*, 453 N.E.2d at 671 (quoting Restatement (Second) of Torts § 46(1) cmt. D (1965)). "[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 633 (6th Cir. 2009) (quoting *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1249 (N.D. Ohio 1993)).

The Sixth Circuit has explained that "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999);[4] *Benge v. General Motors Corp.*, 267 F. Supp. 2d 794, 805 (S.D. Ohio 2003). Here, Plaintiff utterly fails to allege facts sufficient to meet that "something more" requirement. The most liberal reading of Plaintiff's Complaint fails to unearth a single factual allegation that would rise to the level of "extreme and outrageous conduct" required to state a claim for intentional infliction of emotional distress. Indeed, when responding to Defendant's Motion for Judgment on the Pleadings, Plaintiff did not even attempt to identify the "something more" responding only, "His allegations are sufficient to raise the prospect, that Defendant, through its employees, intentionally caused Plaintiff intentional emotional distress." (Doc. 17 at PageID 153.)

---

[4] If this were not true, *every* discrimination claim *automatically* would become a claim for intentional infliction of emotional distress. *Godfredson*, 173 F.3d at 376.

Accordingly, Defendant's Motion for Judgment on the Pleadings must be granted as to Count Four of Plaintiff's Complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Fed. Rule 12(c) Motion for Judgment on the Pleadings is **GRANTED** with respect Plaintiff's First, Second, Fourth, and Fifth Causes of Action. It is **GRANTED IN PART** and **DENIED IN PART** as to his Third Cause of Action. This civil action will proceed, then, on Plaintiff's claim for retaliatory denial of reinstatement only.

**IT IS SO ORDERED**.

Dated: 3/9/18

Judge Susan J. Dlott
United States District Court